UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ARCHIE ARBERRY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TEJAS UNDERGROUND, LLC, a ) <br> Nevada limited liability company; Greg ) <br> Walker; Dave Hackler; Rodney Bell; ) <br> Doug Shawyer; Tom Hackel; and DOES ) <br> I-X; and ROES I-X, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:08-cv-00168-GMN-PAL <br><br> **ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (ECF No. 43). Plaintiff filed a Response on August 26, 2010 (ECF No. 46) and Defendants filed a Reply on September 10, 2010 (ECF No. 47).

The Court has considered the pleadings and arguments offered by the parties. IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment (ECF No. 43) is GRANTED in part and DENIED in part.

## FACTS AND BACKGROUND

This case concerns allegations of wrongful termination in employment based upon Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e), 42 U.S.C. §1981, Age Discrimination in Employment Act of 1967, 29 U.S.C. 621-634, and Nevada Revised Statutes 613.330 Race Discrimination violations. (Complaint, ECF No. 1). Plaintiff, Archie Arberry, was a 60+ year old African-American male employed by Defendant,

Tejas Underground, LLC, (hereinafter "Tejas") for two years, from November 29, 2004 to November 28, 2006. *Id.* Tejas ceased operations in late 2007 and officially closed its business as of January 1, 2008. (Mtn. for SJ pg. 6, ECF No. 43).

Tejas was an entity engaged in the installation of underground utilities for municipalities, industrial and commercial buildings. (Response pg. 2, ECF No. 46). Plaintiff was hired as a full-time water truck driver at a starting salary of $12.00 per hour on November 29, 2004. (Response pg. 2, ECF No. 46). His primary job was to operate a water truck on construction sites and disperse water from the truck onto the grounds. (*Id.*).

Plaintiff alleges that Defendants had a pattern and practice of discrimination based on race. Among other allegations, Plaintiff asserts that Defendants discriminated against him and other African-Americans and Hispanics by:

- Assigning African-Americans and Hispanics to more difficult and lower wage jobs then Caucasian employees.

- Paying African-Americans and Hispanics less than Caucasian employees for the same job.

- Disciplining African-Americans and Hispanics more harshly and more often than Caucasian employees.

- Requiring African-Americans and Hispanics to be drug tested more often than Caucasian employees.

- Discouraging African-Americans and Hispanics from enrolling in training programs.

- Assigning Caucasian employees to jobs that paid prevailing wages between thirty-six dollars ($36.00) and forty dollars ($40.00) per hour while assigning African-Americans and Hispanics to lower paying jobs that paid between twelve dollars ($12.00) and sixteen dollars ($16.00) per hour.

- Assigning approximately 80% of the supervisory jobs to Caucasian employees even though the percentage of Hispanic and African-American employees was about 80% compared to only about 20% Caucasian.

- Reprimanding and/or terminating African-Americans and Hispanics for offenses, which when committed by Caucasian employees did not result in a reprimand or termination.

1  (*Id.* pg. 3-4).

2        Plaintiff received a satisfactory rating at his first and second performance reviews
3  on April 1, 2005 and January 20, 2006. (*Id.*).  He also received a $2.00 pay increase and a
4  $1.00 pay increase at the two performance reviews, respectively. ( *Id.*; See Defendants'
5  Ex. 6 & 8). Plaintiff alleges that the second increase in his pay from $14.00 an hour to
6  $15.00 an hour was due to his complaint to management that he was being paid less than
7  a less-qualified white water truck driver. (*Id.* at 4).

8        Plaintiff then alleges that because of his complaint in the above-referenced
9  instance Defendants orchestrated a pattern of retaliatory acts against Plaintiff to terminate
10 his employment. (*Id.* at 5).  The first act of alleged retaliation was that Defendants
11 suspended Plaintiff from work for five days without pay for damaging the tail light of his
12 water truck. (*Id.*).  Plaintiff claims that an investigation revealed that some boys had
13 found the key to the truck and taken it for a joy ride and damaged the light. (*Id.*).
14 Defendants apparently reimbursed the Plaintiff for the five missed days pay. (*Id.*).
15 Defendants claim that this incident is unsubstantiated and there is no evidence in
16 Plaintiff's exhibits that demonstrate any reimbursement records. (Reply pg. 3, ECF No.
17 47).

18       Next, Plaintiff asserts that his water truck was replaced with a rundown truck in
19 July, 2006. (Response pg. 5, ECF No. 46).  Plaintiff claims that this truck's tires were
20 bald, the glass in the driver's side window was missing and that there was no air
21 conditioning and heating in the truck. (*Id.*).  This water truck's fuel gauge did not work
22 properly, which Plaintiff claims led to more retaliatory actions by Defendant. (*Id.*).
23 Plaintiff alleges that he was not told that the fuel gauge did not work, and when the truck
24 ran out of gas on Plaintiff's first trip out with this truck his supervisor suspended him for
25 five days without pay. (*Id.*; *see* Defendants' Ex. 20, ECF No. 43-1).  Then on November

20, 2006, Plaintiff estimated that this truck had less than half a tank of gas and reported this to his supervisor so that they could send a gasoline truck out to the jobsite to fill his truck sometime that day. (Response pg. 5, ECF No. 46).   Shortly thereafter, one of Defendants' foremen arrived with two five gallon gas cans to fill up Plaintiff's truck. (*Id.*).  Plaintiff has no idea how much gas was poured from the gas cans into his truck but alleges that Defendants used this incident to reprimand him. (*Id.*).  Plaintiff was suspended for five days without pay for requesting the refueling of the truck because his tank was actually not empty. (*Id.*).

Defendants strongly refute Plaintiff's version of this incident ("gas incident"). First, Defendants claim that this incident occurred on November 16, 2006. (Reply pg. 4, ECF No. 47).  Defendants assert that because Plaintiff indicated that he was out of fuel a fuel truck was pulled off another job site across town to come resolve the problem. (*Id.*). Once there, the employee who traveled across town to fill Plaintiff's truck with fuel only used 9.4 gallons to fill the 50 gallon tank.  Defendants claim this cost Tejas time and money. (*Id.*).  On November 17, 2006 Plaintiff left the jobsite at 11:30 a.m. claiming he was sick and as a result the Defendants did not have a chance to get the reprimand for the "gas incident" signed. (*Id.*; *see* Defendants' Ex. 5, ECF No. 43-1).  Plaintiff refused to sign the reprimand again on November 20, 2006 and was sent home at 7:30 am.[1] (*Id.*; *see* Defendants' Ex. 6, ECF No. 43-1).  The next day, on November 21, 2006, Plaintiff was officially suspended for failing to properly communicate with his supervisor regarding his fuel issues. (*Id.*; *see* Defendants' Ex.7, ECF No. 43-1).   Plaintiff refused to sign the written reprimand. (*Id.*). Plaintiff went to University Medical Center on November 25, 2006 and received treatment because of stress from the above situation.  (Response pg. 9,

---

[1] Plaintiff refutes this claim by Defendants alleging that he worked 8 hours on November 20, 2006 and cites to Plaintiff's Exhibit 10.  However, Exhibit 10 is not the timecard for November 20, 2006.  Exhibit 9 contains the timecard for November 20, 2006 and 2 ½ hours are listed on that day.

ECF No. 45; *see* Plaintiff's Exhibit 1J, ECF No. 45-2).

Defendants additionally assert a list of prior incidents that resulted in Plaintiff being reprimanded. The first was on January 4, 2005, when Plaintiff allegedly failed to report for work and Defendants issued a verbal warning to Plaintiff. (Response pg. 11, ECF No. 45; *see* Defendants' Ex.3, ECF No. 43-1). Plaintiff claims that he showed up for work but that he was allowed to leave as it was raining. (Response pg. 11, ECF No. 45; *see* Plaintiff's Ex. 6, ECF No. 45-4). Then Defendants allege that Plaintiff was issued a written warning for a second no show/no call on January 24, 2005. (Response pg. 12, ECF No. 45; *see* Defendants' Ex. 4, ECF No. 43-1). Defendants also claim that Plaintiff did not come into work on March 29, 2005 and did not give a reason for his absence. (Response pg. 12, ECF No. 45; *see* Defendants' Ex. 5, ECF No. 43-1). Plaintiff alleges that Defendants fabricated all of these instances because Plaintiff has not signed any of the above reprimands. (Response pg. 12, ECF No. 45).

In addition to the above reprimands, Defendants also issued written reprimands that Plaintiff did sign. On April 4, 2005, Plaintiff received a written reprimand reminding him to check his tires for rocks, because there were two flat tires on his water truck. (*See* Defendants' Ex. 7, ECF No. 43-1). On April 4, 2006, Plaintiff was reprimanded for failure to disconnect his water hose from the hydrant which resulted in the hydrant being damaged. (*See* Defendants' Ex. 9, ECF No. 43-1). Plaintiff does not dispute these instances, however he alleges that there is a disparity between the way he was treated verses the way some white employees were treated for the same mishaps. (Response pg. 13, ECF No. 45).

Plaintiff's job was officially terminated on November 28, 2006. The termination notice indicates the reason for dismissing Plaintiff was "[n]umerous and continuous problems with [Plaintiff]. There has [sic] been 4 written reprimands since his employment

started and numerous other issues." (*See* Defendants' Ex. 24, ECF No. 43-1).

## DISCUSSION

**A.     Rule 56 Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Id.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

/ / /

**B.     Title VII Disparate Treatment**

Title VII makes it unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;
or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).[2]  To prevail under a Title VII claim, the plaintiff must first establish a prima facie case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cohen-Breen v. Gray Television Group, Inc.*, 661 F.Supp.2d 1158, 1165 (D. Nev. 2009) (citing *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, (1973).  "A plaintiff can establish a prima facie case of discrimination through either the burden-shifting framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of discriminatory intent." *Cohen-Breen*, 661 F. Supp.2d at 1165.  Under *McDonnell Douglas*, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Id.*  If the plaintiff succeeds in doing so, the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. *Id.*  If the Defendants provide such a reason, then the burden shifts back to the Plaintiff to show that the

---

[2] Similarly, NRS §613.330 makes it an unlawful employment practice for an employer to "discriminate against any person with respect to his compensation, terms, conditions or privileges of employment, because of his race, color, religion, sex, sexual orientation, age, disability or national origin." Because a claim for discrimination under Nevada law is substantially similar to a Title VII claim, the court will discuss only Title VII.

Defendants' justification is a mere pretext for discrimination. *Id.*

To establish a prima facie case of discrimination the Plaintiff must demonstrate that (1) Plaintiff is a member of a protected class; (2) Plaintiff is qualified for the position; (3) Plaintiff suffered an adverse employment action; and (4) that circumstances surrounding the adverse action give rise to an inference of discrimination. *Id.*; *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004).

Defendants appear to admit that Plaintiff is a member of a protected class as he is an African-American male over the age of forty. However, Defendants argue that Plaintiff has not established a *prima facie* case of discrimination because Plaintiff is not qualified to be a water truck driver because of his poor performance on the job and numerous reprimands and because the circumstances surrounding Plaintiff's termination do not give rise to an inference of discrimination. Defendants have presented a number of instances in which Plaintiff was reprimanded because of his poor job performance and unexcused absences. Defendants indicate that the April 2005 performance evaluation is a starting point for the Plaintiff to improve after an initial 90-day evaluation, but instead of improving Plaintiff's performance regressed during the latter half of 2006.

Next, Defendants argue that Plaintiff has not produced any credible evidence that others outside of his class were treated more favorably. Defendants have produced information regarding Tejas' water truck drivers' pay and employment history. (*See* Defendants' Ex 26, ECF No. 43-1). This information shows a number of instances where water truck drivers outside of Plaintiff's protected class were subject to similar discipline and dismissal. Defendants therefore argue that Plaintiff has not demonstrated any inference of discrimination surrounding Plaintiff's termination sufficient to establish *prima facie* proof of discrimination.

Plaintiff appears to be sufficiently qualified for the position as he possessed a

1 commercial driver's license (CDL), received a satisfactory rating at both his first and
2 second performance reviews and performed the job as a water truck driver for nearly two
3 (2) years.  Plaintiff's termination from his job qualifies as an adverse employment action.
4 *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir.2000).  Finally, Plaintiff
5 alleges that there are numerous circumstances surrounding his termination that give rise
6 to an inference of discrimination.

7 Plaintiff claims that he first began to be treated badly by Defendants after he
8 questioned why a similarly situated Caucasian employee was being paid more than him.
9 After this occurred, Plaintiff noticed a significant shift in his treatment such as being
10 assigned to an allegedly unsafe vehicle while the Caucasian employees were assigned to
11 new or better maintained vehicles. (*See* Plaintiff's Ex. 1 and 2, ECF No. 45-2 & 45-3).
12 Also, Plaintiff claims he and other African-Americans and Hispanic employees were
13 disciplined more often and more harshly for infractions than when the same infractions
14 were committed by Caucasian employees. (*See* Plaintiff's Exhibit 1, ECF No. 45-2).
15 Plaintiff offers his own deposition and another ex-employee's deposition as evidence of
16 the disparate treatment.  Therefore, the Court finds, construing the facts in a light most
17 favorable to the Plaintiff, that Plaintiff has established *prima facie* proof of
18 discrimination.

19 Defendants are thus required to articulate a legitimate non-discriminatory reason
20 for their allegedly discriminatory conduct. *Cohen-Breen*, 661 F. Supp.2d at 1165.  Poor
21 performance has been held to be a legitimate non-discriminatory reason for discharge.
22 *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).
23 Defendants have articulated such a legitimate reason for dismissing the Plaintiff based
24 upon Plaintiff's carelessness, absenteeism, and failure to communicate which is
25 established by Defendants' documentation.

However, because Defendants have met their burden of proffering legitimate reasons for terminating Plaintiff, the burden then shifts back to Plaintiff to put forth specific and substantial evidence that Defendants' reasons are really a pretext for racial discrimination.  *Aragon,* 292 F.3d at 661.  Plaintiff has demonstrated that there is sufficient evidence to show that he was a good, diligent employee.  These include the employee evaluations on April 1, 2005 and January 20, 2006; a recommendation from Plaintiff's supervisor to the Clark County School District recommending Plaintiff for a job with the district; and statements made by Mr. Hacker and Mr. Walker to Plaintiff's wife that Plaintiff was a hard worker. (Plaintiff's Ex. 1A & 4, ECF No. 45-2 & 45-4).  Plaintiff also argues that several of the issues for which he was reprimanded by Defendants were created by Defendants' own inaction.  Plaintiff was reprimanded and suspended when his truck ran out of gas, but Defendants had provided Plaintiff a truck with a defective fuel gauge.  The truck also had bald tires which made it impossible for Plaintiff to avoid flat tires.

Plaintiff argues that Defendants have painted a picture that Plaintiff was frequently absent and reprimanded for his poor performance, when in actuality Defendants' reasons for firing Plaintiff was because Plaintiff was an African-American.  Plaintiff offers his own affidavit and two affidavits from other terminated employees, charging that Plaintiff and other non-Caucasian employees were discriminated against.  Defendants argue that these biased statements do not establish evidence of intentional discrimination.  *See Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996) ("[A]n employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact." *Id.* (citing *Schuler v. Chronicle Broadcasting Co. Inc.*, 793 F.2d 1010 (9th Cir. 1986))).  However, in *Hernandez v. City of Vancouver*, the court found that affidavits from two co-workers who testified that plaintiff was discriminated

against on account of his race were sufficient evidence of pretext. 227 Fed.Appx. 666, 670 (9th Cir. 2008).

Remarkably, Defendants further argue that Plaintiff has not offered any evidence or testimony of any discriminatory animus by any Tejas supervisor, director or superintendent and that there is no evidence of any racial slur, comment, or joke heard during Plaintiff's employ at Tejas.  The evidence is clearly to the contrary, Plaintiff's affidavit states that Rodney Bell told him to do "whatever the white guys" on the job told him to do. (Plaintiff's Ex. 1 pg. 2, ECF No. 45-2).  The use of the words "white guys" in this comment, especially when directed to an African-American individual is a racially charged comment.

Further, the Court does not find persuasive Defendants' argument, that since the two individuals, who hired Plaintiff, Gregory Walker and Rodney Bell, were also the same two individuals responsible for the decision to terminate Plaintiff's employment, there could be no discriminatory motive.  Defendants explain that it is absurd to conclude that these two individuals somehow developed a discriminatory animus against African-Americans two years after hiring Plaintiff.  Furthermore, Defendants point to the fact that Tejas employed six other African-American water truck drivers during Plaintiff's tenure. However, the reasoning behind the holding in the *Bradley* case is not relevant here. 104 F.3d at 270-71(holding that where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive). Plaintiff's allegations in this case do not turn upon whether Defendants wanted to employ African-American employees at all, but whether Defendants wanted only to employ African-Americans who would not complain about being assigned to the more labor-intensive positions and receiving less pay than their Caucasian counterparts for the same work.

1 Accordingly, the same actor rule is not applicable.

2 There are many immaterial facts in this case, however there are some material questions of fact that a reasonable juror could find in favor of either side. Affidavits of Plaintiff's impression of events that took place as well as those affidavits submitted by ex-employees all qualify as evidence to support a denial of summary judgment. *See Hernandez*, 227 Fed.Appx. at 670. It is up to the jury to determine the credibility of the witness and as such this Court cannot find as a matter of law that the reason Plaintiff's job was terminated was not in retaliation for Plaintiff complaining to his supervisors about less pay and poor working conditions or that Plaintiff was not discriminated against during his employment because he was African-American.

**C.   Age Discrimination**

Under the Age Discrimination in Employment Act (ADEA), it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The *McDonnell-Douglas* burden-shifting approach used in Title VII claims is also used for ADEA claims. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 141-142 (2000). To establish a *prima facie* case for age discrimination, a plaintiff must show (1) that he is a member of the protected age class; (2) that he was satisfactorily performing his job; (3) that his employment was terminated; and (4) that he was replaced by a substantially younger person with equal or inferior qualifications. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).

Plaintiff's evidence does not establish a *prima facie* case of age discrimination. While Plaintiff was a 60+ year old male at the time of termination, qualifying as a protected member of a class under ADEA ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)), has provided evidence that he performed his job satisfactorily with his employment evaluations and was terminated, Plaintiff has not provided any evidence

that he was replaced with a younger person or that his age was the basis of his termination in any way.  Plaintiff's only allegation is that he was the only water truck driver over the age of 60 when he was terminated.  Conversely, there is a strong inference against age discrimination given that Plaintiff was already a member of the protected age class when he was hired.  Without any further evidence that Plaintiff's age was a determining factor, it is unreasonable to conclude that Defendants would hire someone in that age group and then fire them two years later based on their age.

Discovery is closed in this case and as such it is clear that there can be no finding that Plaintiff was replaced by a younger person.  Summary Judgment upon this claim is therefore proper because Plaintiff has not established *prima facie* evidence of age discrimination.

Having concluded that Plaintiff has failed to state a *prima facie* case for age discrimination the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's ADEA claim.

**D.     Rule 26 Evidence of Damages**

Defendants further petition the court to grant summary judgment on the issue of damages and determine that no compensatory damages are available to Plaintiff.  As this request deals with evidentiary issues, the Court will treat this as a motion in limine.  A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence.  It is settled law that in limine rulings are provisional.  Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).  Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir.

2002). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires the parties to disclose a "computation of each category of damages" claimed and to make available for copying any nonprivileged documents or evidentiary materials on which the damage calculation is based. *See Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). A party who fails to make the required initial disclosure "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial" unless such failure was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *Hoffman*, 541 F.3d at 1179; *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The party facing sanctions has the burden of proving its failure to comply with Rule 26 was "substantially justified" or "harmless." *Yeti By Molly, Ltd.,* 259 F.3d at 1106. The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the discretion of the trial court. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2nd Cir. 2006).

The Ninth Circuit has identified factors that the district court should consider in deciding whether to impose Rule 37(c)(1)'s exclusion of evidence sanction. *Wendt v. Host International, Inc.,* states that the court should consider the following: (1) the

1  public's interest in expeditious resolution of litigation, (2) the court's need to manage its
2  docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring
3  disposition of cases on their merits, and (5) the availability of less drastic sanctions. 125
4  F.3d 806, 814 (9th Cir.1997).  Courts are more likely to exclude damages evidence when
5  a party first discloses its computation of damages shortly before trial and substantially
6  after discovery has closed. *See Hoffman,* 541 F.3d 1175; *see also Design Strategy*, 469
7  F.3d 284.
8       Plaintiff does not contest that he failed to supply any initial disclosures in this case
9  and therefore did not disclose a computation of damages as required by Fed. R. Civ. P.
10  26(a)(1)(A)(iii).  At Plaintiff's deposition, Plaintiff replied that he did not know the
11  amount of his damages. (Defendants' Ex. 21 at 46, ECF No. 43-1).  Further, the attorney
12  stated that Plaintiff had not yet evaluated the case and documents to arrive at a damages
13  figure. (Defendants' Ex. 21 at 46-47, ECF No. 43-1).  Discovery had already closed by
14  the date of Plaintiff's deposition.  Defendants argue that because discovery is closed and
15  Plaintiff has not produced a computation of damages, Plaintiff's compensatory damages,
16  as a matter of law are zero.
17       Defendants were put on notice that Plaintiff was claiming compensatory damages
18  in the amount of $300,000 damages in his complaint. (Complaint pg. 4, ECF No. 1).
19  Plaintiff requests to be allowed to use Plaintiff's computation of damages from his Early
20  Neutral Evaluation ("ENE") as evidence of Plaintiff's damages.  Plaintiff claims that
21  Defendants were served with a copy of the computation of damages from the ENE.
22  However, there is no evidence in the record that Defendants were served with this
23  document.  Further, Local Rules regarding ENE's state that the Evaluation Statements
24  submitted by each party, which includes the computation of damages are confidential,
25  "shall not be served on the opposing party" and "shall remain confidential unless a party

gives the court permission to reveal some or all of the information." LR 16-6(e) & (e)(2). Therefore, unless Plaintiff can provide evidence that Defendants were inadvertently served with the computation of damages or that the computation of damages was otherwise revealed to Defendants during the ENE proceedings, the Court must assume that no such notice was given.

However, the Court finds that Plaintiff's failure to comply with Fed. R. Civ. P. 26(a)(1)(A)(iii) may be harmless and is inclined to allow the ENE computation of damages into evidence. The damages claimed by Plaintiff are for lost wages, reimbursement for lost benefits, medical expenses, as well as special and punitive damages. Thus the ENE computation complies with Rule 26(a)(1)(A)(iii) requirements for computation of damages. However, copies of documents or evidentiary material regarding the damages did not accompany this disclosure.

Yet the Court does not believe that Defendants will be prejudiced by allowing the ENE computation of damages because Defendants were fully aware of Plaintiff's wage at his termination and amount of medical benefits Defendants provided to Plaintiff. The comment regarding the 1993 Amendments to Rule 26 suggest that a party would not be expected to provide a calculation of damages which depends on information in the possession of another party or person. Fed. R. Civ. P. 26, cmt. to 1993 amend. Here, Defendants possess all the documents relating to Plaintiff's wages and employment benefits.

Accordingly, the Court is not inclined to allow the calculation for the medical expenses to be introduced into evidence as Defendants could not have been previously aware of this amount and there is no supportive documentation which could provide Defendants the opportunity to verify the reasonableness of the amount alleged. The Court would allow evidence of the medical expenses to be admitted only if Plaintiff can

demonstrate that Defendants were previously put on notice of the amount of medical expenses.

Therefore, the Court will allow testimony as to lost wages, reimbursement for lost benefits and medical treatment, but will exclude evidence of the amount of medical expenses incurred by Plaintiff as well as any other documentary evidence of medical bills that were not previously disclosed to Defendants.

## CONCLUSION

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment on Plaintiff's claim of wrongful termination in employment based upon Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e), 42 U.S.C. §1981, and Nevada Revised Statutes 613.330 Race Discrimination violations is DENIED and that Defendants' Motion for Summary Judgment on Plaintiff's claim of Age Discrimination in Employment Act of 1967, 29 U.S.C. 621-634 [ADEA] is GRANTED;

IT IS FURTHER ORDERED THAT Defendants Motion to exclude evidence of damages is partially DENIED.  Plaintiff will be allowed to testify as to lost wages, reimbursement for lost benefits and medical treatment and submit his ENE computation of damages of lost wages and lost benefits.  However, Plaintiff WILL NOT be allowed to submit his ENE computation of incurred medical expenses.

DATED this 6th day of December, 2010.

_____
Gloria M. Navarro
United States District Judge